## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSLYNN SIMMONS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 15-929 |
| COMMUNITY EDUCATION | : | |
| CENTERS, INC. | : | |

### MEMORANDUM

**KEARNEY, J.**                                                    **April 20, 2015**

In yet another challenge to the private prison owner's alleged mistreatment of minority corrections officers serving at the George Hill Correctional Facility, we now review claims by a present union leader that management fosters a hostile work environment, retaliates against claimants and discriminates against African-American officers. As this present union leader with seventeen years' experience cannot show an adverse employment action arising from alleged discrimination against her, we dismiss her race discrimination claim under the Pennsylvania Human Relations Act ("PHRA"). We also dismiss her employee-based state law negligence and strict liability claims based on her alleged contracting of tuberculosis at the prison as these allegations must be resolved through the Pennsylvania Workman's Compensation Act. We also strike many paragraphs, largely copied from other Complaints in this District that have nothing to do with her harm.[1] At this preliminary stage, we deny the motion to dismiss the PHRA retaliation and hostile work environment claims which now proceed to discovery along with other claims filed by the same lawyer on behalf of other minority officers.

---

[1] *See Kwaning v. Community Education Centers, Inc.*, C.A. No. 15-928 (E.D.Pa.); *Mitchell v. Community Education Centers, Inc.*, C.A. No. 14-5026, (E.D.Pa.) (Surrick, J.); *Siler v. Community Education Centers, Inc.*, C.A. No. 14-5019 (E.D.Pa.) (Robreno, J.); *McWilliams v. Community Education Centers, Inc.*, C.A. No. 14-4783 (E.D.Pa.); *Black v. Community Education Centers, Inc.*, C.A. No. 13-6102 (E.D.Pa) (DuBois, J.); and, *Blocker v. Community Education Centers, Inc.*, C.A. No. 13-5127 (E.D.Pa.) (Pratter, J.).

## I.     Facts alleged in Complaint.

Plaintiff Roslynn Simmons ("Officer Simmons") is a corrections officer at the George Hill Correctional Facility (the "Prison"), owned and run by Defendant Community Education Centers, Inc. ("CEC").  (*Id.* ¶¶ 1-2.)  She began working at the Prison in 1998 and is now on the Executive Board of the corrections officer union.  (*Id.* ¶ 2.)  In this capacity, Officer Simmons learned of many instances of alleged racial discrimination against African-American officers. (*Id.*)  Officer Simmons encouraged those officers to come forward and make complaints but the majority have not done so fearing retaliation.  (*Id.* ¶ 2.)

Officer Simmons discussed the Prison's racial discrimination with CEC's Vice President and Prison management.  (*Id.* ¶¶ 45, 85.)  They did not follow-up or investigate.  (*Id.*)  Officer Simmons alleges that the Prison subjects her and other African-American corrections officers to differing standards of discipline and scrutiny.  (*Id.*)  As alleged, the Prison often disciplines white officers more leniently, including no discipline, than African-American officers.  Officer Simmons alleges that this disproportionate discipline creates an atmosphere with a "chilling effect" on African-American officers.  (*Id.* ¶ 118.)  African-American employees, including Officer Simmons, are allegedly afraid of seeking promotions.  (*Id.*)

In May 2013, after approximately fifteen (15) years of employment, Officer Simmons filed an administrative charge with the EEOC and PHRA alleging race discrimination, retaliation and hostile work environment.  (*Id.* ¶ 119.)  A newspaper then published an article concerning the charge that did not specifically identify Officer Simmons but, according to her, transparently referenced her as the complaining officer.  (*Id.* ¶ 120.)  After publication, Officer Simmons alleges Prison employees including an assistant warden subjected her to "unwarranted scrutiny". (*Id.* ¶ 121-24.)  The assistant warden, along with an employee from prison investigations, stated

2

"we are watching you" and "the camera is on you." (*Id.* ¶ 121.) The assistant warden allegedly made comments seemingly taunting Officer Simmons over her filing of the charge and that she was going to lose at the administrative level. (*Id.* ¶ 122-23.)

Officer Simmons also alleges that she contracted tuberculosis ("TB") from unsafe conditions at the Prison. (*Id.* ¶ 4.) She alleges that the Prison made misrepresentations to regulatory agencies regarding the training and staffing at the Prison, which allowed the Prison to house more inmates. (*Id.* ¶ 3.) As a result, the prison became overcrowded and at some point the Prison ran out of TB inoculations for the inmates. (*Id.* ¶ 4.) This created the risk that some inmates and employees would be at risk to contract TB. Officer Simmons alleges that this elevated risk led to her contraction of TB. (*Id.*)

## II.    Analysis

Officer Simmons asserts only state law claims under the Pennsylvania Human Relations Act ("PHRA") and Pennsylvania common law.[2] Officer Simmons alleges race discrimination, hostile work environment, and retaliation in violation of the PHRA (Counts I, IX, and X). (Compl., ¶¶ 125-27, 151-56) Officer Simmons brings claims for negligence, gross negligence, negligence per se, and strict liability relating to contracting TB at the Prison (Counts V, VI, VII, and VIII).[3] (*Id.* ¶¶ 140-50.) CEC moves to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6).[4]

---

[2]    This Court properly exercises diversity jurisdiction pursuant to 28 U.S.C. § 1332. Officer Simmons is a Pennsylvania resident while CEC is a New Jersey corporation. The amount in controversy exceeds $75,000.

[3]    Officer Simmons voluntarily withdrew her claims for unjust enrichment, breach of contract, and breach of warranty (Counts II, III, and IV). (ECF Doc. No. 11).

[4]    A Rule 12(b)(6) motion to dismiss examines the complaint's sufficiency. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The complaint need not contain "detailed factual

### A.     Discrimination under the PHRA (Count I)

A *prima facie* race discrimination claim requires: (1) the plaintiff is a member of a protected class; (2) the plaintiff suffered an adverse employment action; and (3) the circumstances of the adverse employment action give rise to an inference of discrimination. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).[5]    In a race discrimination claim, an adverse employment action "encompasses all tangible employment actions 'such as hiring, firing, failing to promote, reassignment or a decision causing significant change in benefits." *Sherrod v. Philadelphia Gas Works*, 57 F. App'x 68, 73 (3d Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L. Ed. 2d 633 (1998)).  The action must be " 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.' " *Storey v. Burns Intern. Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).  "The mere fact that the employee 'generally finds [the conduct] objectionable' is not sufficient." *Baker v. City of Philadelphia*, No. 05-1562, 2009 WL 3579815, at *7 (E.D. Pa. Oct. 27, 2009) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 388 (3d Cir. 1995).

CEC argues that Officer Simmons does not allege an adverse employment action. (ECF Doc. No. 5, Def.'s Mem., 13.)   At oral argument, Plaintiff's counsel stated that Officer

---

allegations" but must set forth " 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.' " *Warren Gen. Hosp.,* 643 F.3d at 84 (quoting *Fowler,* 578 F.3d at 210).  We will dismiss a complaint if the factual allegations in the complaint are not sufficient " 'to raise a right to relief above the speculative level.' " *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank,* 712 F.3d 165, 169 (3d Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[5]      Plaintiff does not bring any federal claims under Title VII. However, Title VII and the PHRA are interpreted together so we analyze PHRA claims under Title VII case law. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

Simmons' adverse employment actions consist of "fail[ing] to seek a higher-paying supervisor position"; "constant scrutiny"; and, being "eye-balled" or "watched." (Mot. to Dismiss Oral Arg. Tr., 51-53.)

These actions do not qualify as adverse employment actions. Officer Simmons' failure to seek a higher paying job cannot constitute an adverse employment action. While a failure to promote may provide the requisite adverse employment action, in general, the plaintiff must actually apply for the open position. *See Johnson v. Independence Blue Cross*, No. 09-4239, 2013 WL 1874954, at *10 (E.D. Pa. May 3, 2013) (citing *Bray v. Marriott Hotels*, 110 F.3d 986, 989-90 (3d Cir. 1997) (citation omitted)). Even in the absence of application, a plaintiff "may press a failure-to-promote claim as long as he made 'every reasonable attempt to convey his interest in the job to the employer.' " *Johnson*, 2013 WL 1874954, at *10 (quoting *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990)). Officer Simmons admits she did not apply for a supervisor job. Officer Simmons does not allege she made "every reasonable attempt" to bring her interest in a supervisor position to CEC's attention.

Without more, Officer Simmons' claims of being under constant scrutiny cannot form the basis of an adverse employment action under the PHRA. Title VII and the PHRA "do not provide relief for general unpleasantness that can occur in the workplace, even if that unpleasantness may be motivated by racial animus." *Barnes v. Nationwide Mut. Ins. Co.*, — F. App'x —, 2015 WL 301134, at *3 (3d Cir. Jan. 23, 2015). Officer Simmons does not allege that due to this scrutiny she was disciplined in a way that may have affected her compensation, job title, or conditions of her employment. She does not allege that she was transferred to another unit with less favorable duties or demoted at any point throughout her long career with the prison. Ultimately, Officer Simmons can point to no factual allegation in her Complaint that

5

amounts to an adverse employment action taken by CEC. Despite the alleged air of racial animus present at the Prison, Officer Simmons fails to show that CEC took such an action that was materially adverse to her interest. *Barnes*, 2015 WL 301134, at *4. We find that Officer Simmons fails to state a claim for race discrimination under the PHRA.

### B.    Retaliation violating the PHRA (Count X).

A *prima facie* case of retaliation requires the plaintiff to plead: "(1) that he engaged in protected activity, (2) an adverse action by the employer either after or contemporaneous with the employee's protected activity, and (3) a causal connection between the protected activity and the employer's adverse action." *Raffaele v. Potter*, No. 09-3622, 2012 WL 33035, at *7 (E.D. Pa. Jan. 6, 2012) (citations omitted). Once a plaintiff establishes a *prima facie* case of retaliation, the burden then shifts under the familiar *McDonnell Douglas* framework to the defendant to proffer a legitimate non-discriminatory reason for its conduct. *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006).

CEC argues that Officer Simmons' retaliation claim should be dismissed for failing to assert a protected activity.[6] (ECF Doc. No. 5, Def.'s Mem., 11-12.) "With respect to protected activity, the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause")." *Moore*, 461 F.3d at 341 (citation omitted). Protected activity may be in the form of

---

[6]    CEC additionally argues that Officer Simmons failed to exhaust her administrative remedies with regard to the retaliation claim because it is not referenced in her administrative charge. (ECF Doc. No. 5, Def.'s Mem., 10.) In multiple paragraphs, Officer Simmons alleges that she complained to corporate, as well as the Prison management, about race discrimination. (*Id.*, Ex. B, ¶¶ 45, 86.)    We find that Officer Simmons' retaliation claim is "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir.1984). Defendant's motion is denied with regard to Officer Simmons' failure to exhaust her retaliation claim.

informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support for co-workers who have filed formal charges.

*Curay–Cramer v. Ursuline Acad. of Wilmington*, 450 F.3d 130, 135 (3d Cir.2006) (internal quotation marks removed).

We find Officer Simmons alleges sufficient protected activity. Union representatives, including Officer Simmons, "provided a Vice President of the corporation with a list of instances of . . . racial discrimination." (Compl., ¶ 45.) This is protected activity and CEC conceded as much at oral argument. (Mot. to Dismiss Oral Arg. Tr., 56.) Further, Officer Simmons alleges that she made "repeated" requests to CEC concerning discrimination at the Prison. (Compl., ¶ 85.) Moreover, she made "repeated" verbal complaints to "sergeants, lieutenants, and the union." (*Id.*) Lastly, Officer Simmons alleges that May 3, 2013 administrative charge constitutes protected activity.[7] (*Id.*, ¶ 119.) These actions constitute protected activity.

We then determine whether Defendants responded to the above protected conduct by imposing an adverse employment action. The adverse employment action standard differs in the retaliation context. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 126 S.Ct. 2405, 165 L. Ed. 2d 345 (2006). "In *Burlington*, the Court established an expansive standard for determining if an employer's action was retaliatory." *Lin v. Rohm and Haas, Co.*, No. 11-3158, 2015 WL 273035, at *3 (E.D. Pa. Jan. 20, 2015). "The language of the substantive provision [of Title VII] differs from that of the antiretaliation provision in important ways." *Burlington*, 548 U.S. at 61. The Court found that the antiretaliation provision is not limited to discriminatory actions

---

[7]     "[W]here, as here, additional acts of retaliation occur after the filing of an EEOC complaint, while the EEOC's investigation is pending, a plaintiff need not file a new administrative charge if the new acts are within the scope of [the] EEOC complaint or the investigation growing out of that complaint." *Lin v. Rohm and Haas Co.*, 865 F. Supp. 2d 649, 662 (E.D. Pa. 2012).

7

that effect the terms and conditions of the employment. *Id.* at 64. Rather, an adverse action must be "materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (citation and internal quotations omitted).

Defendants, allegedly doing nothing in response to Officer Simmons' complaints to corporate, as well as her complaints to lieutenants, sergeants, and the union, did not retaliate with an adverse employment action. (Compl., ¶ 45, 85.)   " '[A]n employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint.' " *LeBlanc v. Hill School*, No. 14-1674, 2015 WL 144135, at *17 (E.D. Pa. Jan. 12, 2015) (quoting *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010); *see also Scott v. Sunoco Logistics Partners*, 918 F. Supp. 2d 344, 356 (E.D. Pa. 2013) (noting that "a failure to investigate a complaint of discrimination . . . is not an adverse employment action.").

We find adverse employment action responsive to Officer Simmons' filing of her administrative charge.  The Prison scrutinized her without reason. (Compl., ¶¶ 119-24.)   A newspaper article "published the fact that Officer Simmons had filed a claim for discrimination."[8] (*Id.* ¶ 120.) Officer Simmons alleges that in June 2013, after Prison officials learned that she filed the administrative charge, "prisons investigations" told Officer Simmons "we are watching you . . . the camera is on you." (*Id.* ¶ 121.) In September 2013, while Officer Simmons counseled a colleague in a meeting with human resources, an assistant warden repeatedly walked back and forth watching Officer Simmons. (*Id.* ¶ 122.) Officer Simmons

---

[8]     Officer Simmons does not allege the newspaper article itself was an adverse employment action.  The newspaper article did not use her name but, according to Officer Simmons, the article included identifying characteristics leading a reader to deduce that she filed the charge.

further alleges that the same assistant warden made the "0-4" comment referring to Officer Simmons' attorney's "win to loss ratio" representing African-American employees. (*Id.* ¶ 123.) Members of senior management were also overheard making similar comments about Officer Simmons' attorney. (*Id.*)

Officer Simmons alleges that this was part of a typical pattern of intimidation on the part of the assistant warden and senior management against employees filing administrative charges. We find, as the facts are alleged, this conduct by the assistant warden and senior management might "dissuade a reasonable worker from making or supporting a charge of discrimination" in the future. *Burlington*, 548 U.S. at 68. We find Officer Simmons has pled an adverse employment action.

Finally, we determine whether there is a causal connection between the protected activity and the adverse employment action. Plaintiff must allege "either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) a pattern of antagonism coupled with timing . . ." *Lauren W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted). "Without such proof, the plaintiff must evidence that causation can be inferred by the trier of fact from the entire record." *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 555 (E.D. Pa. 2013) (citing *Lauren W.*, 480 F.3d at 267).

At this preliminary stage, we find Officer Simmons plausibly alleges a causal connection between her protected activity and the adverse employment action. The pattern of antagonism towards Officer Simmons is sufficient at this stage to plausibly state a claim. *See Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007). Officer Simmons alleges that from May to September 2013 the assistant warden and prisons investigations subjected her to unwarranted scrutiny, as well as made comments meant to intimidate her after filing her

9

administrative charge.  This pattern of antagonism towards Officer Simmons demonstrates a

retaliatory motive on the part of the employer and tends to show causation between the protected

act and the adverse employment action.  *See Walsh v. Wal Mart Stores, Inc.*, 200 Fed. App'x

134, 136 (3d Cir. 2006).  Officer Simmons plausibly alleges a retaliation claim.

### C.    Hostile Work Environment violating the PHRA (Count IX).

A *prima facie* case of hostile work environment requires a showing that (1)   plaintiff

suffered intentional discrimination because of her race; (2) the discrimination was severe and

pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would

detrimentally affect a reasonable person of the same race in that position; and (5)  respondeat

superior liability. *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990).

CEC argues that Officer Simmons fails to make a *prima facie* showing.[9]   Specifically,

CEC argues that Officer Simmons did not allege severe or pervasive discrimination.  (ECF Doc.

No. 5, Def.'s Mem., 9-10.)  The vast majority of Officer Simmons' allegations, CEC argues,

contain references to conduct that Officer Simmons was not directly involved in.  (*Id.*)

We agree the Complaint is rife with allegations regarding discriminatory actions against

*other* corrections officers.  However, we recognize that these actions may be taken into account

whether a hostile work environment is present. *See Velez v. QVC*, 227 F. Supp. 2d 384, 410-11

(E.D. Pa. 2002).  Since a plaintiff must show more than "'isolated indicia of a discriminatory

environment'", discriminatory conduct directed towards co-workers may be highly relevant. *Id.*

at 410 (quoting *Vinson v. Taylor*, 753 F.2d 141, 146 n.40 (D.C. Cir. 1985)).  However, the

---

[9]     CEC also contends that Officer Simmons failed to exhaust her hostile work environment
claim. We disagree. Officer Simmons alleges in her administrative charge that she was subject
to discrimination, retaliation, and harassment each year of her employment at the Prison. (ECF
Doc. No. 7-1, 18.)    We find that the hostile work environment claim "can reasonably be
expected to grow out of the charge of discrimination." *Ostapowicz v. Johnson Bronze Co.*, 541
F.2d 394, 398-99 (3d Cir. 1976). We deny this exhaustion argument.

pleading of these incidents alone is not sufficient to state a claim but at this stage, the lack of direct discrimination inflicted upon Officer Simmons is not determinative.

"Rather, a plaintiff relying upon the employer's past discriminatory conduct towards other employees must show that he or she was aware of the incidents during his or her term of the employment, and that, under the circumstances of the case, there is a nexus between the discrimination directed at him or her, and that directed at others." *Velez*, 227 F. Supp. 2d at 410. The relevant inquiry when determining whether a nexus exists is "[w]hether . . . in light of . . . incidents [directed at other employees], the incidents [that the plaintiff] experienced more directly 'would reasonably be perceived and [were] perceived, as hostile or abusive . . . ." *Id.* at 411 (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 112 (2d Cir. 1997)) (alteration in original).

As to the awareness, Officer Simmons pleads that as a union representative she has heard of many instances of discriminatory conduct by the Prison.  (Compl., ¶ 2.)  Further, she encouraged many of the employees to come forward and make complaints, but many declined in fear of retaliation.  (*Id.*)  We are satisfied that Officer Simmons was aware of many of the instances of discriminatory conduct alleged in the Complaint. *Velez*, 227 F. Supp. 2d at 411 ("Hearing about [discriminatory events] even second hand, is sufficient to make a plaintiff aware of the nature of the environment in which he works.").

Officer Simmons must also "show a nexus between the discrimination directed at him or her and that directed at others." *Velez*, 227 F. Supp. 2d at 411.  Officer Simmons alleges she Prison subjected her to unwarranted scrutiny; she enjoyed less job security than white corrections officers; and, a white officer "took issue" with Officer Simmons' decision to vote for President Obama.  Standing alone, these allegations are insufficient to state a claim for hostile work

11

environment. *Id.* at 414. However, in light of the other allegations that Officer Simmons was aware of, we find that Officer Simmons reasonably perceives these incidents as hostile or abusive. *Id.* at 411. Officer Simmons alleges her awareness of other acts of race discrimination, including a photograph of an African-American corrections officer with a noose drawn around her neck, pictures portraying African-Americans with enlarged nostrils, and using racial slurs. (Compl., ¶ 35, 40, 56.) Given the "totality of the circumstances", we find Officer Simmons states a claim for hostile work environment at this preliminary stage.

### D.    The Pennsylvania Workers' Compensation Act ("PWCA") bars Officer Simmons' negligence and strict liability claims.

The PWCA provides the exclusive remedy for an employee injured in the scope of her employment. *See* 77 Pa. Con. Stat. Ann. § 481(a). Pennsylvania state and federal courts consistently apply PWCA exclusivity. *See Poyser v. Newman & Co., Inc.*, 522 A.2d 548 (Pa. 1987); *Winterberg v. Trans. Ins. Co.*, 72 F.3d 318, 323 (3d Cir. 1995). In exchange for surrendering their rights to recover at common law, employees are essentially guaranteed compensation for injuries incurred on the job without establishing the employer's fault. *Poyser*, 522 A.2d at 550. "Where the PWCA's exclusivity provision applies, Pennsylvania courts lack subject-matter jurisdiction to consider an employee's tort claims." *Uon v. Tanabe Intern. Co., Ltd.*, No. 10-3792, 2010 WL 4861436, at *3 (E.D. Pa. Nov. 30, 2010).

CEC argues that the PWCA bars Officer Simmons' tort claims for workplace injury because she was inflicted with TB in the scope of her employment. (ECF Doc. No. 6, Def.'s Supp. Mem.) Consequently, she is precluded from bringing negligence claims against CEC to recover for her work place injury. (*Id.*)

Officer Simmons argues her contraction of TB fits within an exception to the PWCA's exclusivity. (ECF Doc. No. 12-1, Pl.'s Mem., 11-12.) Officer Simmons alleges that she

12

contracted TB after the Prison continued bringing in new prisoners even though there was a shortage of TB vaccines. (*Id.*) This conduct, combined with prison overcrowding, contributed to Officer Simmons contracting TB. (*Id.*)  Officer Simmons then asks us to follow the Pennsylvania Supreme Court's decision in *Martin v. Lancaster Battery Co.*, 606 A.2d 444 (Pa. 1992). (*Id.*)

### *Martin does not apply to Officer Simmons' state law claims.*

In *Martin*, the Pennsylvania Supreme Court carved a very narrow exception to PWCA's general exclusivity.  Lancaster Battery Company employed Martin.  Its manufacturing of batteries exposed employees to lead dust and fumes.  As required by federal regulation, Lancaster Battery conducted testing to monitor employees' lead content in their blood. Lancaster Battery tested Martin.  Lancaster Battery Company's manager intentionally withheld Martin's test results and altered the results.  Martin was subsequently diagnosed with "chronic lead toxicity, lead neuropathy, hypertension, gout, and renal insufficiency." *Martin*, 606 A.2d at 446.  The severity of Martin's condition could have been reduced if defendant had not engaged in the intentional conduct.  The Pennsylvania Supreme Court held PWCA's exclusivity provision did not apply because where "[t]he aggravation of the injury arises from and is related to the fraudulent misrepresentation of the employer", the employee is not limited by the PWCA in seeking recovery at common law. *Martin*, 606 A.2d at 448.

The cases post-*Martin* reinforce that this narrow exception is limited to the facts in *Martin*. *Winterberg*, 72 F.3d at 323-24; *Uon*, 2010 WL 4861436, at \*4; *Kostryckyj v. Pentron Lab. Techs., LLC*, 52 A.3d 333, 337-40 (Pa. Super Ct. 2012).  To meet the *Martin* exception, a plaintiff must show "(1) fraudulent misrepresentation, which (2) leads to the aggravation of an employee's pre-existing condition." *Kostryckyj*, 52 A.3d at 338.  Our Court of Appeals has

13

cautioned that "flagrant misconduct" or "bad faith" cannot be the standard for applying the *Martin* exception, otherwise the workers' compensation scheme "runs the risk of dismantlement." *Winterberg*, 72 F.3d at 322-23. The Pennsylvania Supreme Court in *Martin* acknowledged as much:

> There is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who actively mislead employees already suffering as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care.

*Martin*, 606 A.2d at 448.

Here, Officer Simmons' claims cannot fit in the very narrow exception carved out by *Martin*. First, Officer Simmons does not allege that the Prison, or any prison employee, made any fraudulent misrepresentation to her personally. Instead, Officer Simmons argues that the Prison made misrepresentations to "certain regulatory agencies." (Compl., ¶ 3.) These misrepresentations allegedly led to Officer Simmons contracting TB. However, making misrepresentations to federal agencies is not sufficient. *See Poyser*, 522 A.2d at 551 (affirming PWCA's preclusion of a products liability claim where defendant deliberately concealed dangerous working condition from federal inspectors). Officer Simmons does not plead that CEC mislead her regarding the spread of TB. While the Prison's conduct may amount to "deliberate and wanton disregard for the safety of its workers", this is not enough to exclude her claims from PWCA's exclusivity. *Id.*

Even assuming *arguendo* Officer Simmons is able to show CEC's fraudulent misrepresentation, her claims still fail to meet the *Martin* exception because she is not complaining of aggravation of a pre-existing injury. *See Kostryckyi*, 52 A.3d at 338. Officer Simmons is attempting to recover for the injury itself. In *Martin*, the plaintiff was not attempting

14

to recover for the injury itself, but rather for the aggravation of the injury. 606 A.2d at 447

("[Plaintiff] is not seeking compensation for the work-related injury itself in this action."). The

post-*Martin* cases make clear that the injury must have been pre-existing and would have been

reduced if his employer had not "perpetrated the fraudulent misrepresentation." *Care*, 2004 WL

728532, at *12. Simmons is seeking compensation for the injury itself rather than the

exacerbation of the injury from any alleged CEC fraud. Her negligence and strict liability claims

do not fit within the very narrow *Martin* exception and are barred by PWCA's exclusivity.

### E.    Motion to Strike

Rule 12(f) permits a party to move to "strike from a pleading an insufficient defense or

any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f)(2). "Motions

to strike are decided on the pleadings alone, and should not be granted unless the relevant

insufficiency is 'clearly apparent.' " *Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 132–33

(E.D.Pa.2007) (quoting *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986)).

CEC moves to strike paragraphs 9-44, 46-74, 75-81, 83-84, and 86-117 as impertinent to

the claims at hand.[10]  (ECF Doc. No. 5, Def.'s Mem., 19-22.)  Again, as we and our esteemed

colleagues have done before, we find many of the paragraphs contained in Officer Simmons'

---

[10]    CEC also moves to strike various paragraphs as time barred.  Because we believe that
some of the allegations CEC seeks to strike as time-barred are relevant to the claims, we will not
undergo that analysis. *See Tate v. Main Line Hosps., Inc.*, No. 03-6081, 2005 WL 300068, at
*13-14 (E.D. Pa. Feb. 8, 2005)  (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,
117, 122 S.Ct. 2061, 153 L.Ed.2d. 106 92002)).  " '[T]he entire time period of the hostile work
environment may be considered by a court for the purposes of determining liability' as long as
'an act contributing to the claim occurs within the filing period.'" *Id.* (quoting *Morgan*, 536 U.S.
at 117) (finding this analysis also applied to PHRA claim).

lengthy Complaint irrelevant to the claims at hand. We strike paragraphs 10, 11, 15, 15[11], 21-22, 39, 42, 46-49, 53, 89, 94-109, 111, 113-117.

### III.    Conclusion

Officer Simmons plausibly states claims for retaliation and hostile work environment violating the PHRA. However, Officer Simmons fails to allege sufficient facts to show she was subject to an adverse employment action for purposes of her race discrimination claim. Officer Simmons' negligence and strict liability claims are barred by the PWCA as it provides the exclusive remedy for employees allegedly injured in the scope of employment. Lastly, we strike several allegations unrelated to Officer Simmons's claims.

---

[11]    The Complaint contains two paragraphs numbered as 15. Both are stricken.