IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSLYNN SIMMONS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 15-929 |
| COMMUNITY EDUCATION | : | |
| CENTERS, INC. | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                 **NOVEMBER 2, 2015**

An employee seeking damages for hostile work environment and retaliation for filing a discrimination complaint must provide evidence of discrimination adversely affecting her employment and retaliation beyond one possible insult of her lawyer's success rate and a sporadic comment about others "watching her". After discovery, she cannot rely on her complaint's allegations alone to defeat her employer's summary judgment motion. We understand she may wish to represent other union workers in filing one of several similar federal lawsuits brought by her counsel against her employer, but she cannot show hostile work environment by only alleging, even in a verified complaint, a panoply of harms unrelated to four instances of minor discipline over a five year period with only one since 2010. Alleging racial slurs and disparate treatment allegedly suffered by unknown persons at unknown times also does not create a private right of action unless she can show severe or pervasive discrimination. As the corrections officer cannot adduce facts of severe or pervasive discrimination adversely affecting her continued employment nor of any adverse employment action in retaliation other than two sporadic and ambiguous comments, we grant her employer's motion for summary judgment in the accompanying Order.

I.  **UNDISPUTED FACTS**[1]

Defendant Community Education Centers, Inc. ("CEC") operates George W. Hill Correctional Facility (the "Prison") in Delaware County, Pennsylvania.[2] CEC employs Correctional Officer Roslynn Simmons ("Officer Simmons") since it began operating the Prison in early 2009.[3] Officer Simmons is African-American and continues to work for CEC at the Prison. Since then, Officer Simmons has been a member of the correctional officer union and served as a union representative on the Executive Board of the union.[4] In this union role, Officer Simmons encourages other officers to file grievances and complain concerning apparent unlawful employment practices.[5] The employment relationship between corrections officers and the Prison is governed by a collective bargaining agreement.[6]

A.  **Officer Simmons' Disciplinary History**

Officer Simmons claims CEC discriminates against her through disparate discipline in four incidents.

On February 17, 2009, CEC disciplined Officer Simmons for reporting late to work.[7] Officer Simmons alleges the union president failed to inform her of a change in her reporting time to 7:45 a.m.[8] When she did not report on time, Sergeant Coccia called Officer Simmons on her cell phone to advise her she was supposed to report at 7:45 a.m. and she should arrive as soon as possible.[9] When an officer is late to work, her supervisor generally does not call with a reminder.[10]

On June 18, 2009, CEC disciplined Officer Simmons for leaving her post.[11] The witness observed Officer Simmons leaving "unit 8's rover" post without permission.[12] Officer Simmons provided no "employee explanation" for her conduct but testified she was walking a nurse "from

8 back to medical."[13]

On February 3, 2010, CEC disciplined Officer Simmons for failing to check attorneys' bags as they passed through the security checkpoint.[14] Officer Simmons contends she asked a Sergeant Simmons to check the attorneys' bags and Sergeant Simmons nodded his head as if he would.[15] According to Officer Simmons, the Sergeant did not check the bags and when Deputy Warden Colucci asked, the Sergeant denied ever hearing Officer Simmons' request.[16] CEC issued a verbal reprimand.[17] Officer Simmons asked, but CEC refused to remove this Disciplinary Notice from her file.[18]

Over four years later, on February 19, 2014, CEC issued a Disciplinary Action Form because Officer Simons reported late to work.[19] CEC claims Officer Simmons violated its policy by reporting to work seven minutes late at 3:52 p.m. and missing mandatory roll call.[20] Officer Simmons admits to arriving late because she found a wallet while shopping at a Target store before coming to work.[21] Officer Simmons turned the wallet over to the head cashier and this detour caused her to report late for work.[22] CEC imposed "progressive counseling" as the lowest possible form of discipline.[23] Officer Simmons appealed this discipline to Chief of Security Richard Leach.[24] Chief Leach, an African American, upheld CEC's discipline citing the CBA provisions, while also noting because it was Officer Simmons' first instance with tardiness, she would only receive progressive counseling.[25] Officer Simmons appealed this denial to Acting Warden James Mattera, who applauded Officer Simmons' honesty in returning the wallet, but upheld the discipline.[26] Officer Simmons then sued CEC.

II. **DISCUSSION**

Officer Simmons claims CEC subjected her to a hostile work environment and retaliation in violation of the Pennsylvania Human Relations Act ("PHRA").[27] CEC now moves for

3

summary judgment on both claims arguing Officer Simmons fails to establish a *prima facie* case sufficient to support either claim at the summary judgment stage. We find Officer Simmons fails to adduce sufficient evidence to overcome summary judgment on either claim.

### A. Officer Simmons cannot show a hostile work environment.

Officer Simmons claims she is subject to a hostile work environment at the Prison on account of her race. To demonstrate a Title VII hostile work environment claim, Simmons must establish: 1) she suffered intentional discrimination because of her race, 2) of a severe or pervasive nature, 3) which detrimentally affected her, 4) and would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability.[28] In determining whether a hostile work environment exists, we examine the circumstances as a whole and refrain from viewing events individually.[29] "Because such an environment must be severe or pervasive, isolated incidents or comments are generally insufficient to state a claim."[30] Title VII and the PHRA are not meant to be treated as "general civility code[s]."[31]

CEC argues Officer Simmons cannot adduce sufficient evidence of a *prima facie* case of a hostile work environment as she cannot show: she suffered intentional discrimination; of a severe or pervasive nature detrimentally affecting her; nor, *respondeat superior* liability as there is no evidence CEC knew of her racial discrimination complaints and failed to take immediate remedial steps.

Officer Simmons' Opposition curiously seems to agree she never experienced intentional discrimination, "defendant's motion for summary judgment attempts to shift the Court's attention away from Officer Simmons' allegations of wrongdoing and focus instead on Officer Simmons' own personal history of disciplines (notwithstanding the fact that *Officer Simmons' lawsuit did not implicate unlawful conduct with respect to her own discipline*)."[32] Our Court of

Appeals has stated this is not an appropriate way to establish a hostile work environment claim.[33] Simmons cannot meet the first element of a hostile work environment claim by *solely* pointing to comments or actions directed at individuals other than plaintiff.[34] Officer Simmons' evidence after months of discovery consists solely of racist comments overheard by others, as well as actions directed at others, then passed on to Officer Simmons in her role as a union representative.

Officer Simmons recounts various instances she claims show the Prison's racially charged atmosphere. For example, Officer Simmons alleges discriminatory hiring and firing; a member of the union board being told her hair was "too afrocentric and not European enough;" union board member reporting Assistant Warden Colluci referred to African American members of the board as Malcom X, Martin Luther King, Jr., Rosa Parks, and Bethany Shabbazz. (ECF Doc. No. 43, at 5-7.) These allegations are not constrained by time as almost none of them are accompanied by date. Those that are accompanied by date occurred in 2009 and 2010. Officer Simmons cannot defeat summary judgment by pointing solely to derogatory and discriminatory comments and actions directed to others. This is especially true where some of the events happened five years ago and the others cannot be placed in the timeline at all.

Even considering the incidents cited by CEC, which it hypothesized were Officer Simmons' most likely arguments of intentional discrimination towards her, we cannot find Officer Simmons suffered intentional discrimination based on her race. CEC discusses four incidents where Officer Simmons received discipline. On February 17, 2009, CEC disciplined her for reporting late to work.[35] Officer Simmons alleges her union president failed to inform her of a change in her reporting time to 7:45 a.m.[36] When she did not report on time, Sergeant Coccia called Officer Simmons on her cell phone.[37] The Sergeant's call is not standard

procedure and generally when an officer is late to work, CEC does call.[38]

CEC cites a June 18, 2009 incident where CEC disciplined Officer Simmons for leaving her post.[39] The witness observed Officer Simmons leaving "unit 8's rover" post without obtaining permission.[40] Officer Simmons provided no "employee explanation" for her conduct but testified she was walking a nurse "from 8 back to medical."[41]

Then, on February 3, 2010, CEC disciplined Officer Simmons for failing to check attorneys' bags as they passed through the security checkpoint.[42] Officer Simmons contends she asked a Sergeant Simmons to check the attorneys' bags and Sergeant Simmons nodded his head as if to approve.[43] According to Officer Simmons, the Sergeant did not check the bags and when Deputy Warden Colucci asked why the bags were not searched, the Sergeant denied ever hearing Officer Simmons' request.[44] CEC issued her a verbal reprimand.[45] Officer Simmons asked CEC to remove the Disciplinary Notice from her file but CEC denied the request.[46]

Four years later, on February 19, 2014, CEC disciplined Officer Simmons for reporting late to work. CEC issued a Disciplinary Action Form.[47] CEC required Officer Simmons to report at 3:45 p.m.[48] Officer Simmons reported at 3:52 p.m. and missed mandatory roll call, a violation of CEC policy.[49] Officer Simmons admits to arriving late but testified she was late because she found a wallet while shopping at a Target store before coming to work.[50] Officer Simmons turned the wallet over to the head cashier and this detour caused her to report late for work.[51] CEC imposed "progressive counseling," as the lowest form of discipline possible.[52] Officer Simmons appealed this determination to Chief of Security Richard Leach.[53] Chief Leach, an African American, upheld the discipline citing the CBA provisions.[54] Officer Simmons appealed this denial to Acting Warden James Mattera, who applauded Officer Simmons' honesty in returning the wallet, but upheld the discipline.[55]

6

Officer Simmons presented no argument on whether these incidents create a genuine issue of material fact with regard to the first prong of a hostile work environment claim. As stated above, Officer Simmons cannot point solely to comments and conduct directed at others to establish a *prima facie* case of hostile work environment.[56] However, we can consider evidence of comments and conduct directed towards others in determining whether facially neutral conduct is actually based on Simmons' race.[57] Even considering the allegations and limited evidence of antagonism towards others, we do not find these sporadic events indicative of racial animosity towards Officer Simmons.[58] Officer Simmons provides no evidence to support any claim CEC's imposed isolated disciplinary actions based on anything other than her actual and partially admitted conduct. While Officer Simmons cites to Officer Frank Kwaning's deposition testimony to show CEC did not discipline Caucasian officers for tardiness, this "bare assertion" with no supporting evidence is insufficient to show intentional discrimination.[59]

**B.    Officer Simmons' PHRA Retaliation claim is subject to summary judgment.**

Officer Simmons' remaining claim is for retaliation under the PHRA. Officer Simmons alleges CEC retaliated against her after she engaged in protected activity, including her filing a PHRC complaint. To establish a *prima facie* case of retaliation, Officer Simmons must show (1) she engaged in activity protected by Title VII; (2) CEC took an adverse employment action against her; and (3) a causal connection between her participation in the protected activity and the adverse employment action.[60] CEC concedes, for purposes of its motion, Officer Simmons engaged in a protected activity.[61]

CEC contends Officer Simmons cannot show an adverse employment action coupled with a causal connection relying on her testimony:

> Q. Have you ever been suspended?

7

> A. No.
> Q. Have you ever been demoted?
> A. No.
> Q. Have you ever been terminated from a prison?
> A. No.
> Q. Has your salary ever been decreased?
> A. No.[62]

According to CEC, this admission closes the door on Officer Simmons' retaliation claim. The legal standard for adverse employment action "speaks in general terms rather than specific prohibited acts" because "an act that would be immaterial in some situations is material in others."[63] Thus, an adverse employment action must be "materially adverse" so that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" and is not limited to the specific actions listed in Title VII's core antidiscrimination provision.[64]

Even with this enhanced scope, Officer Simmons fails to adduce evidence of an adverse employment action against her in retaliation for her protected activity aside from her own Complaint's allegations. While Officer Simmons urges us to consider the allegations of the Complaint sufficient to overcome summary judgment, we cannot do so.[65] A plaintiff must engage in the discovery process and proffer evidence tending to support her claims. We were willing to find Officer Simmons pled—ever so slightly—a claim at the motion to dismiss stage but the burden has changed and Officer Simmons must do more than point to factually unsupported allegations.[66] Even if Officer Simmons were to cite specific evidence in support of her alleged adverse actions, we do not find these actions would "dissuade a reasonable worker from making or supporting a charge of discrimination."[67] By requiring material adversity, Title VII's anti-retaliation provision recognizes the importance of "separate[ing] significant from

trivial harms."[68] It does not protect employees from "petty slights, minor annoyances, and simple lack of good manners."[69]

Officer Simmons alleges one month after she filed her PHRC charge, a "prison investigation investigator" approached Officer Simmons and stated "we are watching you . . . the camera is on you." Then, three months later, the assistant warden walked back and forth while Simmons counseled a fellow corrections officer. Additionally, the assistant warden allegedly directed the comment "0-4" at Officer Simmons referring to Officer Simmons' counsel and his alleged record "in PHRC filings."

We cannot find these allegations, individually or in the aggregate, sufficient to support a retaliation claim. While excessive scrutiny in the workplace may be unpleasant, it does not rise to the level needed to overcome summary judgment.[70] Further, we find the comment regarding Officer Simmons' attorney to be the type of "petty slight" not encompassed in the anti-retaliation provision, in addition to having no real derogatory intent directed at Officer Simmons herself. We find no reasonable juror could find these events rise to the level of an adverse employment action.

### III. CONCLUSION

Simmons fails to support her PHRA retaliation claim with evidence sufficient to create a genuine issue of material fact with regard to any adverse employment action taken against her for her protected activity. Her hostile work environment claim fails because she cannot establish and no reasonable juror could conclude she suffered intentional discrimination. Officer Simmons almost solely relies on the allegations averred in her state court complaint along with factually unsupported assertions from a plaintiff in a separate case against the Prison. While those allegations may have been sufficient to defeat a motion to dismiss on these claims, after

9

discovery a plaintiff must come forward with something more. Officer Simmons has failed to do so. Summary judgment is granted in the accompanying Order.

---

[1] The Court's Policies require that a Statement of Undisputed Material Facts ("SUMF") be filed in support of a Fed.R.Civ.P. 56 motion, as well as an appendix of exhibits or affidavits. CEC filed its SUMF at ECF Doc. No. 33-1 ("CEC SUMF"). CEC filed a "Joint Appendix" at ECF Doc. Nos. 33-2 through 33-5. Simmons responded to CEC's SUMF at ECF Doc. No. 43-3 referred to as "Simmons' SUMF." Simmons added documents to the "Joint Appendix" at ECF Doc. Nos. 43-4 through 43-5. References to exhibits in the appendices shall be referred to by Bates number, for example, "Joint Appendix (J.A.) 1."

[2] Simmons disputes CEC's principal place of business being in New Jersey and instead claims "[a] principle [sic] place of business for George W. Hill Correctional Facility is located in Thornton, Pennsylvania as the center of Operation and Control." (Simmons' SUMF, at ¶ 1.) As Simmons' claims are currently before us on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332, this creates a question surrounding our proper exercise of subject matter jurisdiction over the claims. This Court, and all federal courts, has a "continuing independent obligation to determine whether subject matter jurisdiction exists." *Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255, 260 (3d Cir. 2008) (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

Simmons cites a motion to remand at ECF Doc. No. 8, yet there has been no remand motion filed in this case. Given the relative interchangeable nature of Simmons' allegations with those of other complaints filed by Simmons' counsel, we attribute this to an oversight on counsel's part. It does not make a difference. The "nerve center" of CEC's operation is Caldwell, New Jersey, thus making it a citizen of New Jersey, as well as Delaware where it is incorporated. We may exercise subject matter jurisdiction over the claims.

[3] (CEC SUMF, at ¶ 2.)

[4] (CEC SUMF, at ¶ 10.)

[5] (CEC SUMF, at ¶ 11.)

[6] (CEC SUMF, ¶ 13.)

[7] (J.A. 135.)

[8] (*Id.* at 135, 185.)

[9] (*Id.* at 188.)

[10] (*Id.*)

---

[11] (*Id.* at 137.)

[12] (*Id.*)

[13] (*Id.* at 137, 193.)

[14] (*Id.* at 146.)

[15] (*Id.* at 195-96.)

[16] (*Id.* at 197.)

[17] (*Id.* at 146.)

[18] (*Id.* at 148, 150.)

[19] (*Id.* at 152.)

[20] (*Id.* at 173-74.)

[21] (*Id.* at 176.)

[22] (*Id.*)

[23] (*Id.* at 152, 175.)

[24] (*Id.* at 154.)

[25] (*Id.*)

[26] (*Id.* at 160.)

[27] Officer Simmons pled only PHRA claims possibly in an attempt to avoid federal question jurisdiction. Since we have diversity jurisdiction over the claims, we "construe Title VII and the PHRA consistently." *Scheidemantle v. Slippery Rock Univ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006).

[28] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

[29] *Abramson v. William Patterson Coll. of New Jersey*, 260 F.3d 265, 276 (3d Cir. 2001).

[30] *Davis v. Solid Waste Servs., Inc.*, —F. App'x—, 2015 WL 4978720, *2 (3d Cir. 2015).

---

[31] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).

[32] (ECF Doc. No. 43-1, at 1.) (emphasis added).

[33] *Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005).

[34] *Id.*

[35] (J.A. 135.)

[36] (*Id.* at 135, 185.)

[37] (*Id.* at 188.)

[38] (*Id.*)

[39] (*Id.* at 137.)

[40] (*Id.*)

[41] (*Id.* at 137, 193.)

[42] (*Id.* at 146.)

[43] (*Id.* at 195-96.)

[44] (*Id.* at 197.)

[45] (*Id.* at 146.)

[46] (*Id.* at 148, 150.)

[47] (*Id.* at 152.)

[48] (*Id.* at 173.)

[49] (*Id.* at 173-74.)

[50] (*Id.* at 176.)

[51] (*Id.*)

[52] (*Id.* at 152, 175.)

---

[53] (*Id.* at 154.)

[54] (*Id.*)

[55] (*Id.* at 160.)

[56] See *Caver*, 420 F.3d at 263.

[57] *Id.* at 263-64.

[58] See *Davis*, 2015 WL 4978720, at *1-3.

[59] *Id.*

[60] See *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006).

[61] (ECF Doc. No. 33, at 7.)

[62] (*Id.* at 9.)

[63] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (citation omitted).

[64] *Id.*

[65] See *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint . . . ."); *Safa v. City of Philadelphia*, No. 13-5007, 2015 WL 3444264, *7 (E.D. Pa. May 29, 2015).

[66] See generally *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 479 (E.D. Pa. 2011).

[67] *Burlington*, 548 U.S. at 68.

[68] *Id.*

[69] *Id.*

[70] See *Martinelli v. Penn Millers Ins. Co.*, 269 F. App'x 226, 230 (3d Cir. 2008); *DeGroat v. DeFebo*, 87 F. Supp. 3d 706, 735 (M.D. Pa. 2015); *Hallman v. PPL Corp.*, No. 11-2834, 2014 WL 349714, *10-11 (E.D. Pa. Jan. 31, 2014).